(No. 38461.—

Kenneth W. Pinkstaff, Appellant, *vs.* The Pennsylvania Railroad Company, Appellee.

*Opinion filed November 24, 1964.*

James A. Dooley, of Chicago, for appellant.

Robert H. Bierma and A. L. Foster, and Kirkland, Ellis, Hodson, Chaffetz & Masters, all of Chicago, (Max E. Wildman and Frederick W. Temple, of counsel,) for appellee.

Mr. Justice Underwood delivered the opinion of the court:

In 1957 plaintiff, Kenneth W. Pinkstaff, won a judgment on a jury verdict in a Federal Employer's Liability Act suit in the circuit court of Cook County against defendant Pennsylvania Railroad Company in the amount of $50,000. Dissatisfied with the amount of the judgment, plaintiff took a sequence of unsuccessful appeals terminating in the denial by the United States Supreme Court on April 17, 1961, of *certiorari* to review our decision (20

Ill.2d 193) affirming an Appellate Court opinion (23 Ill. App. 2d 507) sustaining the trial court judgment. Thereafter a dispute arose between the parties as to whether defendant was liable for interest during the period of 3½ years while appeals were pending.

On August 31, 1961, defendant paid into the office of the clerk of the circuit court the sum of $49,250.70 computed on the following basis:

Judgment . . . . . . . . . . . . .$50,000.00
Costs in trial court. . . . . . .     36.10
Interest from 4/17/61 (the date when the United States Supreme Court denied certiorari) to 8/31/ 61 (the date of tender) .    931.50

TOTAL . . . . . . . . . . . . . . .     $50,967.60
    Less Railroad Retirement lien . . . . . . . . . . . . :. . . .  1,576.00
NET . . . . . . . . . . . . . . . . .     49,391.60
    Less Appellate Court Costs of defendant . . . . .   140.90

NET BALANCE . . . . . . . . . .     $49,250.70

Plaintiff refused to accept this deposit in satisfaction of the judgment, claiming the deduction of Appellate Court costs and lien were improper, and that interest had been incorrectly computed. Subsequently, on plaintiff's motion, the trial court entered an order finding "that at no time had the defendant made such a tender of the payment of the judgment, interest and costs as would stop the running of interest on the said judgment," and directing that "plaintiff have and recover the sum of $50,000, plus the costs in the trial court and plus the statutory sum of interest at the rate of 5% on the said judgment * * * from

November 5, 1957, until the same is satisfied in full." Defendant appealed and the parties joined in a stipulation in the Appellate Court which limited the question on appeal to a determination of defendant's liability for interest under the Interest Act as determined by the circumstances of this case. The Appellate Court reversed the order of the circuit court, construing the amendatory proviso of section 3 of the Interest Act as inapplicable to appeals by the judgment creditor, and holding that the tender and deposit by the defendant were proper. We have granted leave to appeal to determine the propriety of the Appellate Court's construction of the Interest Act because this case presents questions not heretofore determined by this court.

The problem before this court is to construe, as amended in 1955, section 3 of the Interest Act. (Ill. Rev. Stat. 1963, chap. 74, par. 3.) The statute now provides: "§ 3. Judgments recovered before any court or magistrate shall draw interest at the rate of 5% per annum from the date of the same until satisfied. When judgment is entered upon any award, report or verdict, interest shall be computed at the rate aforesaid, from the time when made or rendered to the time of rendering judgment upon the same, and made a part of the judgment; *Provided, however, that the judgment debtor may by tender of payment of judgment, costs and interest accrued to date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of appeal, writ of error, or other steps to reverse, vacate or modify the judgment."* (Italics ours.) The proviso in the statute as shown by our italics was added in 1955.

The controlling issue which requires a contemporary construction of section 3 is whether an appealing judgment creditor is entitled to interest on the judgment which he is appealing during the period of his appeal, a question not considered by any reviewing court of this State since the addition to the statute of the 1955 proviso.

At common law interest could be recovered in no case except those where an express agreement therefor existed, but because of delays in the payment of final judgments, the legislature provided a statutory remedy in section 3 of the Interest Act by way of interest on such judgments to compensate for such delays. *Blakeslee's Warehouses* v. *City of Chicago*, 369 Ill. 480-483.

Prior to the addition of the proviso, the appellate courts of this State were unanimous in holding an appealing judgment creditor was not entitled to interest on his judgment pending disposition of the appeal, since the delay in payment thereof was either wholly or partly occasioned by his action in appealing or cross-appealing. (*Kinne* v. *Duncan*, 323 Ill. App. 363, 55 N.E.2d 545 (abst. only); *McGowan* v. *London & Lancashire Indemnity Co.* 237 Ill. App. 561, 569; *Warner Construction Co.* v. *Lincoln Park Comrs.* 278 Ill. App. 42, 53; see also, *Moll* v. *Sanitary District of Chicago*, 228 Ill. 633.) This rule has recently been criticized for its inequities (64 Yale Law Journal, 1019) for the reason that it deprives an unsuccessful appealing judgment creditor of the interim use of the money due on a judgment when, by virtue of such unsuccessful appeal, the propriety of the original judgment, as here, is affirmed.

Since the addition of the proviso in 1955, only one court has had occasion to consider the instant issue under Illinois law. The Federal Court of Appeals in *Quality Molding Co.* v. *American National Fire Ins. Co.* (7th cir. 1961) 287 F.2d 313, followed the rule enunciated by the *Kinne* case in 1944, but did not attempt to construe newly amended section 3 of the Interest Act which would have been controlling.

Defendant relies on the above developed case law in contending that the plaintiff was not entitled to interest on his judgment from 1957 to 1961, and argues that the proviso was intended "to protect the right of the judgment debtor to suspend interest by a tender, without thereby

losing the right to appeal." In support of this thesis defendant states that, "Absent such a statutory provision as the tender proviso enacted in 1955, an appealing judgment debtor could not make full tender so as to stop the running of interest without running the risk of losing his appeal by estoppel * * *." In this, defendant has misconstrued the prevailing law in Illinois, for it is well established that the payment or satisfaction of a money judgment by a judgment debtor does not bar the prosecution of a writ of error or an appeal by such judgment debtor. *Richeson* v. *Ryan*, 14 Ill. 74; *Hatch* v. *Jacobson*, 94 Ill. 584; *Armstrong* v. *Douglas Park Building Ass'n*, 176 Ill. 298, 301; *Lott* v. *Davis*, 262 Ill. 148; *Jacksonville Hotel Building Corp.* v. *Dunlap Hotel Co.* 350 Ill. 451; *First Nat. Bank of Jonesboro* v. *Road District No. 8,* 389 Ill. 156; *Kars* v. *Knauf*, 13 Ill. App. 2d 219, 141 N.E.2d 410.

The following language found in the *Richeson* case is as pertinent today as then: "Ryan recovered a judgment against Richeson. The latter paid the judgment before an execution issued, and then sued out a writ of error to reverse it. Did the payments operate as a release of errors? If the judgment had been collected by execution, there would not be a doubt of the right of Richeson to prosecute the writ of error. A payment made under such circumstances would be compulsory, and would not preclude him from afterwards reversing the judgment, if erroneous, and then maintaining an action to recover back the amount paid. The payment in question must equally be considered as made under legal compulsion. The judgment fixed the liability of Richeson, and he could only avoid payment by procuring its reversal. He was not bound to wait until payment should be demanded by the sheriff. *He was at liberty to pay off the judgment at once, and thereby prevent the accumulation of interest and costs. By so doing, he did not waive his right to remove the record into this court, for the purpose of having the validity of the proceedings tested*

*and determined. The pleas are bad, and the demurrer must be sustained."* (Emphasis ours.)

Thus, as early as 1852 this court recognized the right of a judgment debtor to pay the judgment and "thereby prevent the accumulation of interest and costs" without waiving his right to appeal.

What, then, was the reason for enactment by the General Assembly of the 1955 proviso? An appealing judgment creditor could not claim interest pending appeal, and the judgment debtor already had the right by established case law to stop the running of interest and costs pending a determination of his appeal by tendering payment of the judgment, interim interest and costs. Clearly, the legislature is not to be presumed to have done a vain or useless thing in the enacting of a statute. (*Pliakos* v. *Illinois Liquor Control Com.* 11 Ill.2d 456.) Since the amendment conferred no new benefits on the appealing judgment debtor, the purpose of the legislature must have been to provide a way by which he could stop the accrual of interest under the statute where the judgment creditor prosecutes an appeal, or take other steps to reverse, vacate or modify the judgment. There would have been no need for such a remedial action unless the legislature was also of the opinion that the judgment creditor should be given a statutory right to interest pending his appeal.

Accordingly, we are of the opinion that the purpose and effect of the 1955 amendment was to express the legislative intent that the plaintiff should be entitled to interest upon his judgment as specified in section 3 even though by appeal he seeks to correct errors therein. At the same time the amendment affords the defendant a means, if he chooses to use it, of terminating the accrual of interest pending determination of the plaintiff's appeal. While defendant argues that a more logical interpretation would be that the effect of the proviso is to give the plaintiff the right to accept the tender without terminating his appeal privileges,

that question is neither presented by the facts of this case nor indicated by the legislative language.

The result here reached is compatible with the legislative philosophy behind the award of interest upon damages between verdict and judgment which is intended to make the plaintiff whole up to that point. The accrual of interest upon the judgment, regardless of by whom appealed, is only an extension to its logical terminus of the "make the plaintiff whole" philosophy. This result works no hardship on the judgment debtor because the interest accrues only if and during such time as he fails to make a valid tender. A tender, within the legal meaning of the word, once made, stops the accrual of interest *instanter*. If the judgment debtor makes no tender, he benefits from the use of the money which by his failure to appeal he concedes is due the plaintiff. Thus, he still has the clear cut choice which he always had.

In the light of our conclusion that the 1955 amendment gave to the appealing plaintiff a right to interest from the date of the trial court judgment, a consideration of the effect of the deposit by defendant of $49,250.70 is required. This payment was obviously insufficient to satisfy the judgment since it included interest only from the date of the United States Supreme Court's denial of *certiorari* on April 17, 1961, whereas the trial court's judgment was entered on November 5, 1957. Since it was insufficient to constitute satisfaction of the judgment, what effect, if any, is to be given it?

Defendant argues that it should be construed as a partial payment of the judgment, and that subsequent interest should accrue only upon the balance of principal thereafter remaining unpaid. At the time defendant made the deposit in the clerk's office his accompanying petition stated the payment was made "in full satisfaction of the judgment, interest and costs", and requested the court to "spread the satisfaction of record". Pursuant thereto, an order was

entered on August 30, 1961, granting leave to defendant to pay the clerk "as set forth in defendant's petition", and further providing that "said judgment heretofore entered is satisfied in open court together with all costs and interest." In the light of the conditions attached by defendant to the payment and the provisions of the court order, we cannot now treat a deposit expressly tendered in full satisfaction of all liability as a partial payment of such liability.

Thus, the deposit of $49,250.70 which is clearly less than the $50,000 judgment, plus costs and interest on the judgment, would not have been a legally sufficient tender even if made before final judgment. What was said in *River Valley Cartage Co.* v. *Hawkeye-Security Insurance Co.* 17 Ill.2d 242, 246, is here pertinent: "A valid tender by the debtor must be 'sufficient to cover all that the creditor then has a right to recover whether of debt, interest or costs. If he tender less, then the tender is not good, * * *'. *Sweetland* v. *Tuthill,* 54 Ill. 215, 216." When subsequently made with the express conditions attached, the deposit neither raised a duty on plaintiff to accept it nor forfeited his right to interest thereafter.

We therefore conclude that plaintiff is entitled to statutory interest at the rate of 5% per annum upon his judgment from the date of entry, November 5, 1957, until satisfied.

The judgment of the Appellate Court is reversed and the May 17, 1962, judgment of the circuit court of Cook County is affirmed.

*Appellate Court reversed;*
*circuit court affirmed.*