**MILLER, Collector of Internal Revenue, v.
HOCKING GLASS CO.**

No. 6801.

Circuit Court of Appeals, Sixth Circuit.
Dec. 12, 1935.

John MacC. Hudson, of Washington, D. C. (Sewall Key, Frank J. Wideman, and S. Dee Hanson, all of Washington, D. C., and Francis C. Canny, of Dayton, Ohio, on the brief), for appellant.

Paul E. Shorb, of Washington, D. C. (J. W. Deffenbaugh, of Lancaster, Ohio, and Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., on the brief), for appellee.

Before HICKS, SIMONS, and AL-LEN, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a judgment in action for tax refund. (D.C.) 5 F.Supp. 355. The appellee, a manufacturer of glassware, obtained fire insurance upon its buildings and equipment, and also policies under which the insurers agreed that in case of the destruction or damage by fire of appellee's physical property, they should be liable "for the actual loss sustained consisting of net profits on the business which is thereby prevented," and for fixed charges and expenses continuing during the suspension of business.[1]

During the life of these policies a fire destroyed substantially all of appellee's buildings, machinery, equipment and supplies. Appellee expended all proceeds from its insurance policies above described in the acquisition of new buildings, equipment, machinery, supplies, etc. The new plant was larger than the old, and the units in production were materially increased.

Appellee returned as taxable income for the year 1924 the sum of $260,168.78, received in an amicable adjustment under the use and occupancy insurance policies,

---

[1] "The conditions of this contract are that if the buildings, described above, and/or machinery and/or equipment contained therein, be destroyed or damaged by fire occurring during the term of this policy so as to necessitate a total or partial suspension of business, this company shall be liable under this policy for the actual loss sustained consisting of net profits on the business which is thereby prevented, and such fixed charges and expenses pertaining thereto as must necessarily continue during a total or partial suspension of business and such expenses as are necessarily incurred for the purpose of reducing the loss under this policy, for not exceeding such length of time (commencing with the date of the fire and not limited by the date of expiration of this policy), as shall be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of said buildings, and machinery and equipment as may be destroyed or damaged. * * * *"

on which a tax was levied and paid. Appellee in its reply concedes that in the income tax return filed by it for the year 1924 it deducted all fixed charges and expenses which were proper deductions for said period. Later appellee made timely claim for refund of $32,521.09 of the tax paid, and upon its rejection brought this suit against the Collector for the amount thereof. Upon written waiver of a jury trial the District Court gave judgment for appellee, holding in substance that the right to use and occupancy is a property right, and that hence it was property within the meaning of section 203 (b) (5) of the Revenue Act of 1924, 43 Stat. 256 [title 26, § 934 (b) (5) (now section 112 [f] U.S.C.) now 26 U.S.C.A. § 112 (f) and note],[2] and that such property being destroyed by fire had been involuntarily converted into money which in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, was expended in the acquisition of other property similar or related in service or use to the property so converted, and that the insured realized no taxable gain.

We think the court erred in its conclusion of law and applied a statute which does not cover the situation presented in this record. Since fixed charges and expenses necessarily paid during suspension of the business were deducted for the year 1924, no question arises as to allocation of the sum received. The insurers agreed to be liable for the actual loss sustained "consisting of net profits" measured by the profits of the preceding year. The purpose expressly stated was to insure anticipated earnings which might be interrupted by the destruction of the plant, earnings to arise out of "the business which is thereby prevented." So regarded, the sum received was taxable income within the broad provisions of section 213 (a) of the Revenue Act of 1924, 43 Stat. 267, title 26, § 954 (a) [now § 22 (a)], U.S.C. (now 26 U.S.C.A. §§ 22 (a), 42 and note).[3] The use to which the appellee put these particular insurance proceeds does not affect the question. If income is taxable, the manner in which it is expended does not relieve the owner thereof from the tax.

The policies offered the usual business interruption insurance, which might better be termed earnings insurance. Under such a policy the insured is protected in the earnings which it would have enjoyed had there been no interruption of business. Hartford Fire Ins. Co. v. Wilson & Toomer Fertilizer Co., 4 F.(2d) 835, 837 (C.C.A.5); Hutchings v. Caledonian Ins. Co. of Scotland (D.C.) 52 F.(2d) 744; Fidelity-Phenix Fire Ins. Co. of New York v. Benedict Coal Corporation, 64 F.(2d) 347, 352 (C.C.A.4).[4]

If appellee's buildings had not been destroyed, in the ordinary course of business, earnings would have been realized which, after the deduction of fixed charges, would have been taxable as net income. When the plant was destroyed, by virtue of the policies appellee received the sum in lieu of earnings. This constituted taxable income, and section 203 (b) (5) of the Revenue Act of 1924 has no application.

The judgment is reversed and the cause remanded.

[2] Section 934. If property (as a result of its destruction in whole or in part * * *) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property, similar or related in service or use to the property so converted, * * * no gain or loss shall be recognized.

[3] Section 954. The term "gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 953 [section 212], any such amounts are to be properly accounted for as of a different period.

[4] Hubbard's Where Fire Insurance Leaves Off (1930) c. 8; Encyclopedia of Insurance in the United States (1930) 249, 250; Wolfe's Principles of Property Insurance (1930) c. 10; Huebner's Property Insurance (1929) 203, 204.